**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MARIA FERNANDA CASTELLANOS RAMIREZ, ROSA CARRASCO, CLAUDIA MARCHAN TORRES, MIJENTE SUPPORT COMMITTEE, ORGANIZED COMMUNITIES AGAINST DEPORTATIONS, <br><br>                Plaintiffs, <br><br>   v. <br><br>LEXISNEXIS RISK SOLUTIONS, <br><br>              Defendant. | Case No. 22-cv-05384 |

<u>**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT**</u>

## <u>TABLE OF CONTENTS</u>

**Page(s)**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 2

    I.      LEGAL STANDARD ................................................................................ 4

    II.     ARGUMENT ................................................................................................ 4

          A.      Plaintiffs Fail to State a Claim Under the Illinois Consumer Fraud and Deceptive Business Practices Act ........................................................ 4

          B.      Plaintiffs Fail to State a Claim for Unjust Enrichment ............................. 8

          C.      Plaintiffs Fail to State a Claim for Intrusion Upon Seclusion ................. 10

          D.      Plaintiffs Do Not State a Claim for Declaratory Relief ........................... 13

          E.      The Organizational Plaintiffs Have Failed to Establish Associational Standing ................................................................................................... 14

CONCLUSION .................................................................................................................. 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acosta v. Scott Labor LLC*,
377 F. Supp 2d 647 (N.D. Ill. 2005) ....................................................................13

*Angelo v. Moriarty*,
No. 15 C 8065, 2016 U.S. Dist. LEXIS 19684 (N.D. Ill. Feb. 18, 2016)
.........................................................................................................10, 11, 12, 13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).............................................................................................4

*Bell Atl. v. Twombly*,
550 U.S. 544 (2007).............................................................................................4

*Benitez v. KFC Nat'l Mgmt. Co.*,
714 N.E.2d 1002 (Ill. App. Ct. 1999) ...............................................................11

*Benson v. Fannie May Confections Brands, Inc.*,
944 F.3d 639 (7th Cir. 2019) ...............................................................................4

*Busse v. Motorola, Inc.*,
813 N.E.2d 1013 (Ill. App. Ct. 2004) ................................................................13

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
761 F.3d 732 (7th Cir. 2014) .......................................................................6, 7, 8

*Clark v. Receivables Mgmt. Partners, LLC*,
No. 21-cv-00298, 2022 U.S. Dist. LEXIS 44468 (N.D. Ill. Mar. 14, 2022) ...........8

*Cleary v. Philip Morris Inc.*,
656 F.3d 511 (7th Cir. 2011) ...............................................................................8

*Dinerstein v. Google, LLC*,
484 F. Supp. 3d 561 (N.D. Ill. 2020) ...................................................................9

*Disability Rts. Wis., Inc. v. Walworth Cnty. Bd. of Supervisors*,
522 F.3d 796 (7th Cir. 2008) .............................................................................14

*Duncan Place Owners Ass'n v. Danze, Inc.*,
927 F.3d 970 (7th Cir. 2019) .............................................................................15

*In re Gallagher Data Breach Litig.*,
No. 22-cv-137, 2022 U.S. Dist. LEXIS 175415 (N.D. Ill. Sept. 28, 2022)
(Rowland, J.).................................................................................................7, 10

*Geisberger v. Willuhn,*
　390 N.E.2d 945 (Ill. App. Ct. 1979) ...............................................................13

*Green v. Chi. Tribune Co.,*
　675 N.E.2d 249 (Ill. App. Ct. 1996) (Cahill, J., dissenting) ..................................13

*Horist v. Sudler & Co.,*
　941 F.3d 274 (7th Cir. 2019) ..............................................................8, 9

*HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.,*
　545 N.E.2d 672 (Ill. 1989) ................................................................9, 10

*Ibarrola v. Kind, LLC,*
　No. 13 C 50377, 2014 U.S. Dist. LEXIS 95833 (N.D. Ill. July 14, 2014) ...............9

*Lansing v. Carroll,*
　868 F. Supp. 2d 753 (N.D. Ill. 2012) ...................................................14

*Lineas Aereas Comerciales S.A. de C.V. v. Jet Support Servs.,*
　No. 17 C 8666, 2020 U.S. Dist. LEXIS 72380 (N.D. Ill. Apr. 24, 2020).................14

*Miller v. Motorola,*
　560 N.E.2d 900 (Ill. App. Ct. 1990) ...................................................12

*Morris v. Harvey Cycle & Camper, Inc.,*
　911 N.E.2d 1049 (Ill. App. Ct. 2009) .....................................................8

*Newman v. Metropolitan Life Insurance Co.,*
　885 F.3d 992 (7th Cir. 2018) ................................................................7

*Patel v. Zillow, Inc.,*
　No. 17-CV-4008, 2017 U.S. Dist. LEXIS 134785 (N.D. Ill. Aug. 23, 2017) .................12, 13

*Prairie Rivers Network v. Dynegy Midwest Generation, LLC,*
　2 F.4th 1002 (7th Cir. 2021) ...............................................................15

*Price v. Philip Morris, Inc.,*
　848 N.E.2d 1 (Ill. 2005) (Karmeier, J., concurring) ................................................8

*Robinson v. Toyota Motor Credit Corp.,*
　775 N.E.2d 951 (Ill. 2002) ................................................................6, 7

*Roppo v. Travelers Cos.,*
　100 F. Supp. 3d 636 (N.D. Ill. 2015) ...................................................5

*Kim v. Carter's Inc.,*
　598 F.3d 362 (7th Cir. 2010) ................................................................7

iv

*In re Trans Union Corp. Privacy Litig.*,
    326 F. Supp. 2d 893 (N.D. Ill. 2004) .............................................................11, 12

*Zic v. Italian Gov't Travel Off.*,
    130 F. Supp. 2d 991 (N.D. Ill. 2011) ...................................................................14

**Statutes**

815 ILCS 505/1(e) ...............................................................................................5

United States Code Title 8 Section 1373 ...............................................................6

United States Code Title 8 Section 1644 ...............................................................6

Chicago's Welcoming City Ordinance ...................................................................6

Cook County's Detainer Ordinance ........................................................................6

Driver's Privacy Protection Act (18 U.S.C. § 2721 (2000)) ..................................2

Gramm–Leach–Bliley Act (113 Stat. 1338) .......................................................2, 7

Ill. Comp. Stat. Ann. 805/5 ...................................................................................6

Ill. Comp. Stat. Ann. 805/15 .................................................................................6

Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA")........................... *passim*

Illinois TRUST Act ...............................................................................................6

**Other Authorities**

Alicia Kozak, <u>American Data Privacy and Protection Act Could Thwart Efforts to
    Save Abducted Children</u>, CHICAGO TRIBUNE (Aug. 22, 2022, 5:00 AM),
    https://www.chicagotribune.com/opinion/commentary/ct-opinion-american-
    data-privacy-protection-act-abducted-children-trafficking-20220822-
    mrn4lfo3dbg25dpmvxso3t7rfu-story.html..............................................................3

Elaine Aradillas, <u>How to Protect Children From Internet Predators: 'Get Used to
    Uncomfortable Conversations,' Says Survivor</u>, PEOPLE (Sept. 2, 2022, 9:56
    AM), https://people.com/crime/survivor-advice-parents-protecting-children-
    against-internet-predators/ ...................................................................................3

Fed. R. Civ. P. 8 ...................................................................................................6

Fed. R. Civ. P. 9(b) ...............................................................................................6

Fed. R. Civ. P. 12(b)(6)......................................................................................2, 4

**INTRODUCTION**

Plaintiffs[1] – a group of individual and organization activists – come to the judicial branch to air their political grievances. They complain of nonexistent violations of undefined privacy rights and seek unprecedented relief to enjoin the lawful business activities of their chosen target, Lexis Nexis Risk Solutions Inc. ("LexisNexis Risk") – a company that has no relationship with these parties.[2] Plaintiffs are unhappy that information about them, such as publicly available court records and commercially available information, can be lawfully gathered and aggregated by LexisNexis Risk and other companies for use by law enforcement and various other government and commercial customers. But that is a public policy dispute that can only be decided by a legislature – not by a court. As a result, the case is premised upon inapposite causes of action and amorphous claims of "privacy rights" that do not exist in the law.

Plaintiffs improperly attempt to use this case to achieve their political objectives to prohibit the collection and sharing of personal information. Specifically, Plaintiffs seek to enjoin LexisNexis Risk from making available the Accurint and Accurint Virtual Crime Center ("AVCC") products offered by its affiliate. Accurint and AVCC offer innovative information solutions that facilitate the ability of law enforcement to access information for crime prevention, enhance the ability of consumers to perform financial transactions, and protect them from identity theft and fraud. These products contain information lawfully obtained through thoroughly vetted partnerships with public and commercial sources. An affiliate of LexisNexis Risk offers its

---

[1] Plaintiffs Maria Fernanda Castellanos Ramirez, Rosa Carrasco, and Claudia Marchan Torres are referred to herein as the Individual Plaintiffs. Plaintiffs Mijente Support Committee and Organized Communities Against Deportations are referred to herein as the Organizational Plaintiffs.

[2] Plaintiffs have named "LexisNexis Risk Solutions" as the sole Defendant in this lawsuit, but such an entity does not exist. The company that was served with the Complaint is named "LexisNexis Risk Solutions Inc." It is an affiliate of that company, named "LexisNexis Risk Solutions FL Inc.," that markets the Accurint and Accurint Virtual Crime Center products at issue in the Complaint. Defendant reserves the right to seek relief on this issue if Plaintiffs do not correct their allegations to properly name the defendant.

Accurint products to a multitude of government and commercial customers who have the right to access the information in accordance with federal law.

Plaintiffs' Complaint asserts several inapplicable causes of action under Illinois law in an effort to find a legal theory that can achieve their political objectives. That effort is futile. Neither the Illinois Consumer Fraud and Deceptive Business Practices Act (the "ICFA") nor the common-law claims of unjust enrichment or intrusion upon seclusion even remotely apply to Plaintiffs' amorphous "privacy" complaints. Because there is no generalized right of information privacy in Illinois law to support Plaintiffs' claims, they have asserted causes of action that simply do not apply. Moreover, the two Organizational Plaintiffs do not even have standing to assert these claims on behalf of their members. For all of these reasons, the Complaint should be dismissed with predjuce under Rule 12(b)(6) for failure to state a claim.

## BACKGROUND

LexisNexis Risk and its affiliates are information and analytics companies that provide its customers with tools to run their businesses and, for law enforcement entities, to investigate crimes. Their customers, which include the most prominent commercial institutions and nearly all law enforcement agencies, rely on Accurint and AVCC. These products provide information derived from a variety of public sources such as court, marriage, death, and property records, and various commercially available sources. In obtaining information from these sources, LexisNexis Risk complies with all applicable regulations, including the Gramm–Leach–Bliley Act ("GLBA") (113 Stat. 1338), the Driver's Privacy Protection Act ("DPPA") (18 U.S.C. § 2721 (2000)), and other laws and regulations enforced by the Federal Trade Commission, Consumer Financial Protection Bureau, and state attorneys general.

LexisNexis Risk and its affiliates maintain contracts with their information vendors, ensuring that the vendors' information-collection practices also satisfy applicable regulations.

2

LexisNexis Risk and its affiliates further enter into contracts with their customers, ensuring that its products are only used for a specific, permissible purpose, as defined in the applicable laws. In short, the information that LexisNexis Risk and its affiliates obtain is collected and distributed in a lawful manner, and Plaintiffs do not make any allegations in the Complaint to the contrary.

Accurint and AVCC are critical for effective law enforcement, the facilitation of commercial transactions, and protection against identify theft and fraud. And, perhaps most significantly, AVCC, which is available *exclusively* to law enforcement and requires mandatory training, has increased the success of law enforcement in the recovery of missing children, expeditious resolution of crimes, and apprehension of dangerous suspects.[3] Every federal law enforcement agency and most state and local law enforcement agencies utilize AVCC.

Both the Individual and the Organizational Plaintiffs are self-described political activists. Compl. ¶ 6. The Individual Plaintiffs admit to having engaged in a variety of activities that generate public records of their actions, such as purchasing homes, obtaining mortgages, and registering a car with the Department of Motor Vehicles. *Id.* ¶¶ 68–69. The same is true of the claimed "Confidential Members" of the Organizational Plaintiffs. *Id.* ¶¶ 72–74. Neither the Individual nor the Organizational Plaintiffs identify any unlawful acquisition or distribution of any of their information, but instead only make vague allegations that LexisNexis Risk "sells" their information to various government and commercial purchasers. *Id.* ¶ 2. No specific damages to any Plaintiff have been alleged. Instead, Plaintiffs' allegations all depend upon the hypothetical

---

[3] As just one example of how the challenged products have enhanced the ability of law enforcement officers to rescue missing children, the Court can review the case of the Internet abduction of then-13-year-old Alicia Kozakiewicz. *See* Elaine Aradillas, How to Protect Children From Internet Predators: 'Get Used to Uncomfortable Conversations,' Says Survivor, PEOPLE (Sept. 2, 2022, 9:56 AM), https://people.com/crime/survivor-advice-parents-protecting-children-against-internet-predators/; Alicia Kozak, American Data Privacy and Protection Act Could Thwart Efforts to Save Abducted Children, CHICAGO TRIBUNE (Aug. 22, 2022, 5:00 AM), https://www.chicagotribune.com/opinion/commentary/ct-opinion-american-data-privacy-protection-act-abducted-children-trafficking-20220822-mrn4lfo3dbg25dpmvxso3t7rfu-story.html. If the challenged products were not available, as Plaintiffs demand, Ms. Kozakiewicz might still be in captivity today.

threat of some future harm from a dissemination of information that has not taken, and may never take, place. *See, e.g.*, *id.* ¶¶ 11–13, 62, 67, 69, 76.

## I.      LEGAL STANDARD

Granting a motion to dismiss is mandated when a complaint fails to allege facts that, if true, would "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Unless Plaintiffs have pleaded concrete facts that would "nudge[] the[] claims across the line from conceivable to plausible," the Court must grant this Motion. *Twombly*, 550 U.S. at 570. A claim has "facial plausibility" only when the allegations give rise to a "reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## II.     ARGUMENT

Each of Plaintiffs' causes of action depends on the assertion of some generalized right to "privacy" with respect to someone's personal, but publicly or commercially available, information under Illinois law. Plaintiffs identify no source of this supposed right. This is not surprising, because no such right exists. Nowhere in the 33-page Complaint do Plaintiffs cite a single statute, constitutional provision, or precedent that recognizes such a right. Instead, Plaintiffs bring claims that have nothing to do with any informational-privacy right. Dismissal of the Complaint with prejudice under Rule 12(b)(6) is thus required for failure to state a claim.

### A.      Plaintiffs Fail to State a Claim Under the Illinois Consumer Fraud and Deceptive Business Practices Act

To plead a successful ICFA claim, a plaintiff must allege facts plausibly showing "that the defendant committed a deceptive or unfair act with the intent that others rely on the deception, that the act occurred in the course of trade or commerce, and that it caused actual damages." *Benson*

*v. Fannie May Confections Brands, Inc*., 944 F.3d 639, 646 (7th Cir. 2019) (internal citation omitted). In addition, an ICFA claim can only be made by an aggrieved "consumer," which is defined as "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." 815 ILCS 505/1(e). Plaintiffs' ICFA claims do not satisfy any of these requirements.

First, Plaintiffs cannot qualify as consumers under the ICFA because they do not, and cannot, plead that they ever purchased any products or services from LexisNexis Risk. In a futile attempt to overcome this obstacle, Plaintiffs assert that they satisfy a "consumer nexus" test that gives them a possible claim under the ICFA. However, to satisfy this test, Plaintiffs must show "(1) that their actions were akin to a consumer's actions to establish a link between them and consumers; (2) how defendant's representations . . . concerned consumers other than [plaintiff]; (3) how defendant's particular [activity] involved consumer protection concerns; and (4) how the requested relief would serve the interests of consumers." *See Roppo v. Travelers Cos.*, 100 F. Supp. 3d 636, 651 (N.D. Ill. 2015). There are no allegations in the Complaint to satisfy any of these requirements either. The fatal problem is that Plaintiffs are not consumers of the challenged products, and they do not allege any harm to consumers of the challenged products, which are the law enforcement agencies and various other purchasers of the products.

Simply put, this is not a consumer-fraud case, and the ICFA only covers claims of consumer fraud. Plaintiffs are complaining about the use of their lawfully acquired information in a manner that has no relationship to any consumer injury. To the contrary, it is the consumers of the challenged products who are allegedly using Plaintiffs' information, and it would be against the interests of such consumers to deny them access to these products. The Complaint does not contain

any allegations of any misrepresentations or deception to the consumers of the products and services sold by LexisNexis Risk. As a result, the ICFA simply does not apply.

Plaintiffs' ICFA claim is also deficient due to its failure to allege any conduct by Defendant that would constitute an unfair business practice.[4] To plead an unfair business practice, Plaintiffs must allege conduct by Defendant that plausibly calls into question "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [or] (3) whether it causes substantial injury to consumers." *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 961 (Ill. 2002). No such conduct is plausibly alleged here.

Plaintiffs make vague allegations that the dissemination of their information to law enforcement and commercial entities is improper. But they do not cite any specific law or regulation that prohibits such a dissemination. While Plaintiffs make the conclusory assertion that LexisNexis Risk's actions in gathering and disseminating their information are contrary to Illinois public policy – broadly citing the Illinois TRUST Act,[5] Cook County's Detainer Ordinance, and Chicago's Welcoming City Ordinance (Compl. ¶ 53) – none of these laws or policies has anything to do with LexisNexis Risk. Instead, the Illinois laws and policies cited by Plaintiffs all only apply to and limit state and local government participation in federal immigration enforcement. They have no application to, and nothing to do with, the actions of LexisNexis Risk, as a private

---

[4] While the Complaint fails to advance any allegations of a deceptive business practice that would survive even Rule 8 pleading standards, under the law of this Circuit, such allegations must be examined under the heightened-pleading standard of Rule 9(b). *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014).

[5] The Illinois Trust Act on its face does not prohibit or restrict a private company disseminating information regarding citizenship: "This Act shall not be construed to prohibit or restrict any entity from sending to, or receiving from, the United States Department of Homeland Security or other federal, State, or local government entity information regarding the citizenship or immigration status of any individual under Sections 1373 and 1644 of Title 8 of the United States Code." *See* 5 Ill. Comp. Stat. Ann. 805/5. Further, the Act specifically allows for information dissemination for investigations of criminal violations: "Nothing in this Section shall preclude a law enforcement official from otherwise executing that official's duties in investigating violations of criminal law and cooperating in such investigations with federal and other law enforcement agencies (including criminal investigations conducted by federal Homeland Security Investigations (HSI)) in order to ensure public safety." *See id.* 805/15.

corporation, in gathering and disseminating information (even when such information is provided to government agencies involved in immigration law enforcement). Indeed, there is not a single legal precedent that has interpreted the ICFA to embody a prohibition against private-company dissemination of lawfully gathered information.[6]

Nor can Plaintiffs credibly argue that LexisNexis Risk's business practice of gathering and disseminating lawfully acquired information is somehow "so oppressive" that it "must violate public policy." *Robinson*, 775 N.E.2d at 961. To the contrary, Plaintiffs raise no allegations that LexisNexis Risk does not comply with the requirements of the GLBA or any other federal or state law that sets forth public policy regarding the gathering and dissemination of information. Plaintiffs' complaint is not that Defendant is not in compliance with these laws but that the laws themselves, in Plaintiffs' views, are not satisfactory. This is not a proper claim of an unfair business practice under the ICFA. It is a public policy dispute that does not belong in a judicial forum.

Finally, Plaintiffs cannot satisfy the ICFA requirement to plead actual damages. A private plaintiff suing under the ICFA must show that she "suffered 'actual damage' as a result of the defendant's violation of the act." *Camasta*, 761 F.3d at 739. In other words, she must plausibly plead that the unfair act caused her to suffer actual damages, meaning pecuniary loss. *See Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010); *see also In re Gallagher Data Breach Litig.*, No. 22-cv-137, 2022 U.S. Dist. LEXIS 175415, at *22 (N.D. Ill. Sept. 28, 2022) (Rowland, J.). Actual loss may occur "if the seller's deception deprives the plaintiff of 'the benefit of her bargain' by causing her to pay 'more than the actual value of the property.'" *Kim*, 598 F.3d at 365. "Actual damages must be calculable and 'measured by the plaintiff[']s loss.'" *See Clark v. Receivables*

---

[6] Plaintiffs' reliance on *Newman v. Metropolitan Life Insurance Co.*, 885 F.3d 992, 1002–03 (7th Cir. 2018), is misplaced. *See* Compl. ¶ 88. Contrary to how Plaintiffs attempt to frame *Newman*, that case involved an alleged bait-and-switch in the sale of an ambiguous insurance policy to consumers and has nothing to do with the lawful dissemination of information challenged by the Complaint.

*Mgmt. Partners, LLC*, No. 21-cv-00298, 2022 U.S. Dist. LEXIS 44468, at *10 (N.D. Ill. Mar. 14, 2022); *see also Price v. Philip Morris, Inc.*, 848 N.E.2d 1, 55 (Ill. 2005) (Karmeier, J., concurring) (noting that a plaintiff must allege she was harmed "in a concrete, ascertainable way[,]" meaning that the defendant's deception made plaintiff tangibly worse off).[7]

Plaintiffs' vague allegations of harm could not be further from "actual damages." The Complaint is devoid of any allegation of even remote tangible harm to Plaintiffs, much less actual harm that was proximately caused by Defendant's allegedly unfair business practices. For example, while Plaintiffs hypothesize that the dissemination of information to U.S. Immigration and Customs Enforcement may lead to deportation of an undocumented immigrant (Compl. ¶¶ 5, 56), the Individual Plaintiffs do not claim that they are undocumented or that they have faced any threat of deportation because of the dissemination of their information. Assuming all of Plaintiffs' allegations of harm to be true, there are no allegations of any tangible injury or pecuniary damages to any of Plaintiffs. Their claims under the ICFA thus fail for this additional reason as well. *See Camasta*, 761 F.3d at 739 (explaining that a plaintiff cannot rely on speculative or conclusory statements regarding damages to support an ICFA claim).

### B.     Plaintiffs Fail to State a Claim for Unjust Enrichment

As a threshold matter, unjust enrichment is not always a standalone cause of action under Illinois law. *See Horist v. Sudler & Co.*, 941 F.3d 274, 281 (7th Cir. 2019). Instead, "if an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim – and, of course, unjust enrichment will stand or fall with the related claim." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011);

---

[7] Plaintiffs do explicitly allege emotional damages, *see* Compl. ¶ 94, but such damages do not constitute actual damages under the ICFA. *See Morris v. Harvey Cycle & Camper, Inc.*, 911 N.E.2d 1049, 1053 (Ill. App. Ct. 2009) (affirming trial court's dismissal of plaintiff's ICFA claim where plaintiff "alleged only emotional damages").

*Dinerstein v. Google, LLC*, 484 F. Supp. 3d 561, 595 (N.D. Ill. 2020). Plaintiffs' unjust enrichment claim rests solely on the alleged improper conduct underlying Plaintiffs' other claims and should fail for the same reasons that the ICFA and intrusion upon seclusion claims must be dismissed. *See Horist*, 941 F.3d at 281 (dismissing unjust enrichment claim); *Ibarrola v. Kind, LLC*, No. 13 C 50377, 2014 U.S. Dist. LEXIS 95833, at *17 (N.D. Ill. July 14, 2014) ("a claim for unjust enrichment cannot stand on its own in light of the Court's dismissal of her ICFA" claim).

Further, even if this Court were to find that Illinois law permits a freestanding unjust enrichment claim, Plaintiffs have not set forth any facts to support the elements of such a claim. Unjust enrichment can only be asserted where there is a direct transactional link between a plaintiff and a defendant, such that a benefit belonging to the plaintiff has been unjustly retained by the defendant. *See HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989). That is, unquestionably, not the case here, as there is no direct transactional link alleged between Plaintiffs and Defendant. To try to overcome this lack of a direct connection, Plaintiffs struggle to wedge their allegations into a fact pattern permitting unjust enrichment claims, where a third-party mistakenly provided a benefit to the defendant that should have gone to the plaintiff. *See id*. But Plaintiffs have not pleaded, nor can they plead, the elements of such a third-party– based unjust enrichment claim here. To plead an unjust enrichment claim based on third-party behavior, Plaintiffs must show

> (1) the benefit should have been given to the plaintiff, but the third-party mistakenly gave it to the defendant instead, (2) the defendant procured the benefit from the third party through some type of wrongful conduct, or (3) the plaintiff for some other reason had a better claim to the benefit than the defendant.

> *Id.* at 679 (internal citations omitted).

None of these facts is plausibly alleged here. Instead, Plaintiffs' claim fails at the threshold because they do not, and cannot, identify any alleged "benefit" given by a third-party to LexisNexis Risk that should have been given to Plaintiffs. *In re Gallagher,* 2022 U.S. Dist. LEXIS 175415, at *31-32. The only "benefit" LexisNexis Risk allegedly obtained is the payments it received from its customers in exchange for products offered by LexisNexis Risk and its affiliates. *See* Compl. ¶ 97. But Plaintiffs cannot plausibly allege that they are somehow entitled to any of the revenue generated by these products.

Moreover, to state a claim for unjust enrichment, Plaintiffs must plead that LexisNexis Risk obtained a benefit rightfully due to Plaintiffs via wrongful conduct. This is another requirement Plaintiffs cannot satisfy. Instead, as discussed above (pp. 6-7 *supra*), Defendant's alleged conduct is not wrongful since there are no plausible allegations that LexisNexis Risk violated any laws. For this reason as well, Plaintiffs' unjust enrichment claim must be dismissed. *See HPI*, 545 N.E.2d at 680.

### C.     Plaintiffs Fail to State a Claim for Intrusion Upon Seclusion

Plaintiffs' final substantive cause of action meets a similar fate for its failure to plead any facts necessary to support a claim for intrusion upon seclusion. To state such a claim, Plaintiffs must allege facts plausibly demonstrating "(1) an unauthorized intrusion or prying into the plaintiff's seclusion; (2) an intrusion that is highly offensive or objectionable to a reasonable person; (3) that the matter upon which the intrusion occurs is private; and (4) the intrusion causes anguish and suffering." *Angelo v. Moriarty*, No. 15 C 8065, 2016 U.S. Dist. LEXIS 19684, at *13 (N.D. Ill. Feb. 18, 2016) (internal quotations removed). None of these elements has been satisfied, which is not surprising, as this tort requires the physical intrusion upon a plaintiff's property – not the dissemination of information about the plaintiff that was lawfully obtained from third-party sources.

*First*, there are no facts pleaded showing an unauthorized intrusion. An intrusion requires a "highly offensive prying into the ***physical*** boundaries or affairs of another person . . . ***not publication or publicity*.**" *Id.* at 13-14 (emphases added) (internal quotation removed). Typical intrusion upon seclusion cases involve "invading someone's home, illegally searching someone's shopping bag in a store, eavesdropping by wiretapping, peering into the windows of a private home, or making persistent and unwanted telephone calls. *Benitez v. KFC Nat'l Mgmt. Co.*, 714 N.E.2d 1002, 1006 (Ill. App. Ct. 1999). Plaintiffs' allegations challenging Defendant's lawful collection of information from third-parties (not from Plaintiffs), and its publication through the Accurint and AVCC products, do not allege any intrusion into the "physical boundaries or affairs" of Plaintiffs.

Indeed, this Court has already considered, and rejected, the argument that an intrusion upon seclusion claim can be stated where the allegedly wrongful behavior is the publication of information about a person without the person's consent. *See In re Trans Union Corp. Privacy Litig.*, 326 F. Supp. 2d 893, 902 (N.D. Ill. 2004). In *Trans Union*, the plaintiffs' "intrusion theory [was] that Trans Union accessed, disclosed, and sold the private financial, credit and other confidential information of plaintiffs without their knowledge[,] authority or consent." *Id.* at 901. These are virtually the same allegations that Plaintiffs try to use to support their intrusion claims here. *See* Compl. ¶ 105. In dismissing the intrusion upon seclusion claim, the court in *Trans Union* noted that the only alleged intrusion was the defendant's access of the plaintiffs' information. *See* 326 F. Supp. 2d at 901. Trans Union was not the original collector of this information but rather received the information lawfully from other sources. *See id.* The court held there was no intrusion upon seclusion claim stated where the plaintiffs disclosed information to a third-party, who "subsequently and lawfully" transmitted the information to Trans Union. *See id.* at 901-02.

Therefore, "Trans Union's accessing its own lawfully obtained files cannot be considered an unlawful intrusion," and the court dismissed the claim. *Id.* at 902.

Plaintiffs' intrusion upon seclusion claim here must be dismissed for the same exact reason. Plaintiffs do not allege LexisNexis Risk obtained any information directly from them. Instead, like Trans Union, the information was lawfully received from third-parties. The only alleged intrusion is LexisNexis Risk's access of Plaintiffs' information from its own files and its subsequent publication. This is not an unlawful intrusion upon seclusion as a matter of law. *Id.*; *see also Miller v. Motorola*, 560 N.E.2d 900, 904 (Ill. App. Ct. 1990) (holding "dissemination or publication" of information about a person is not an unlawful intrusion).

*Second*, Plaintiffs' intrusion upon seclusion claim also fails because there are no facts alleged of any conduct that would plausibly be viewed as "highly offensive or objectionable to a reasonable person." *Angelo*, 2016 U.S. Dist. LEXIS 19684, at *13; *see also Patel v. Zillow, Inc.*, No. 17-CV-4008, 2017 U.S. Dist. LEXIS 134785, at *28-30 (N.D. Ill. Aug. 23, 2017) (dismissing claim at motion-to-dismiss stage because plaintiff did not plead a highly offensive intrusion). Plaintiffs' allegations challenge the *publication* of information about them that Defendant obtained from lawful sources: "LexisNexis' misuse of personal information *reveals* private facts . . . . It maintains, sells, and advertises a surveillance database using records that *reveal* intimate details about subjects' private lives[.]" Compl. ¶ 106 (emphases added). There are no facts pleaded to plausibly demonstrate that this publication would be reasonably viewed as highly offensive. Indeed, even if it had been pleaded that some of the information about Plaintiffs was not lawfully obtained (which is not the case), such facts would not, by themselves, be sufficient to demonstrate that the methods used to obtain this information were "highly offensive" so that it would constitute an unlawful intrusion. As the court in *Patel* held, "the *publication* of unlawful information alone

12

says nothing about whether there was a highly offensive *intrusion* to glean the information ultimately published." *Patel*, 2017 U.S. Dist. LEXIS 134785, at *28.

*Third*, Plaintiffs' intrusion upon seclusion claim fails because the information they allege was intruded upon is not private. *See Angelo*, 2016 U.S. Dist. LEXIS 19684, at *13 (stating that one of the required elements for intrusion upon seclusion is that "the matters upon which the intrusion occurred were private"). The information that Plaintiffs claim was intruded upon by Defendant is "family history, current addresses, phone numbers associated with non-public utility accounts, unredacted social security numbers, [and] biographical details[.]" Compl. ¶ 106. None of these pieces of information would be "private," under the law, as there are no facts pleaded that they were obtained by anything other than lawful, public, and commericially available sources. "Examples of inherently 'private facts' includ[e] 'a person's financial, medical, or sexual life, or a peculiarly private fact of an intimate[,] personal nature.'" *Acosta v. Scott Labor LLC*, 377 F. Supp 2d 647, 650 (N.D. Ill. 2005) (quoting *Green v. Chi. Tribune Co.*, 675 N.E.2d 249, 260 (Ill. App. Ct. 1996) (Cahill, J., dissenting)). "Matters of public record – name, address, date of birth and fact of marriage – have been held not to be private facts." *Busse v. Motorola, Inc.*, 813 N.E.2d 1013, 1018 (Ill. App. Ct. 2004) (citing *Geisberger v. Willuhn*, 390 N.E.2d 945, 948 (Ill. App. Ct. 1979)). Further, *Busse* held that Social Security numbers do not "fulfill[] the privacy element necessary to plead intrusion upon seclusion." *Id*. Because Plaintiffs have not pleaded that Defendant obtained any information about Plaintiffs that would satisfy the privacy element of an intrusion upon seclusion claim, dismissal is required for this reason as well. *See id.* at 1017 ("Because the analysis begins with the predicate, private facts, it also ends there if no private facts are involved.").

### D. Plaintiffs Do Not State a Claim for Declaratory Relief

The Court should dismiss Count IV for declaratory relief as a matter of course. This is not a proper cause of action because it is entirely duplicative of the relief sought by other claims. When

the declaratory relief sought is "useless" due to the presence of a duplicative cause of action – in this case, Counts I–III – dismissal of the declaratory judgment claim is mandated. *See Zic v. Italian Gov't Travel Off.*, 130 F. Supp. 2d 991, 997-98 (N.D. Ill. 2011). Federal courts "regularly exercise [their] discretion to dismiss declaratory judgment claims that 'fail[] to add anything not already raised in'" another claim. *Lineas Aereas Comerciales S.A. de C.V. v. Jet Support Servs.*, No. 17 C 8666, 2020 U.S. Dist. LEXIS 72380, at *18 (N.D. Ill. Apr. 24, 2020) (quoting *Lansing v. Carroll*, 868 F. Supp. 2d 753, 763-64 (N.D. Ill. 2012)).

Hence, Count IV for declaratory relief must be dismissed. The declaratory relief Plaintiffs seek is for "a judgment declaring that Defendant has violated their rights under the ICFA and Illinois common law." Compl. ¶ 112. The claim is thus entirely duplicative of Counts I–III, which seek relief for the same causes of action. *Id.* ¶¶ 80–107. Therefore, the declaratory relief is "useless" and subject to dismissal, as a matter of law. *See Zic*, 130 F. Supp. 2d at 998.

### E. The Organizational Plaintiffs Have Failed to Establish Associational Standing

In addition to the above grounds, the Organizational Plaintiffs' claims must be dismissed because they do not meet the requirements of associational standing to state claims on behalf of their members. Associational standing requires a prudential determination that neither the claims asserted nor the relief requested requires the participation of individual members of the association in the lawsuit. *See Disability Rts. Wis., Inc. v. Walworth Cnty. Bd. of Supervisors*, **522 F.3d 796,** 801 (7th Cir. 2008). This requirement cannot be met where the Organizational Plaintiffs seek to assert claims, including for damages, on behalf of their undisclosed, "confidential members." *See* Compl. ¶¶ 73–74.

To determine whether any of the Organizational Plaintiffs' members can state a claim and are entitled to relief, the Court would have to conduct an individualized assessment of their claims

to determine, for example, whether an individual member's information was unlawfully obtained by Defendant, whether the member meets the requirements for a "consumer" under the ICFA, how and whether the member's information was wrongfully published by Defendant, and whether that publication caused the individual member any actionable damages. It is not possible for the Court to make such an assessment without joining the individual members of the Organizational Plaintiffs as parties to the case. Indeed, the Complaint filed by the Organizational Plaintiffs does not even identify who their "confidential members" are, making it impossible for any judicial determination to be made as to whether any of these members have an actionable claim.

The need for individualized inquiries, by itself, requires a rejection of associational standing. *See, e.g.*, *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1009 (7th Cir. 2021) (denying associational standing even where confidential members submitted additional affidavits in support of their claims). The Seventh Circuit has squarely held that where the participation of association members is required to determine their right to relief on an individualized basis, associational standing must be denied. *See Duncan Place Owners Ass'n v. Danze, Inc.*, 927 F.3d 970, 978 (7th Cir. 2019) (dismissing the associations' claims on behalf of their members because they would require "individualized proof").

## CONCLUSION

For all the foregoing reasons, Defendant respectfully requests that the Court dismiss all of Plaintiffs' claims with prejudice. The theories underpinning Plaintiffs' claims are beyond repair by repleading, as Plaintiffs' real complaint – that there should be a law that prohibits the dissemination of their lawfully available information – is found nowhere in the inapplicable claims asserted. Simply put, Plaintiffs' public policy dispute with the lack of any law prohibiting the third-party dissemination of their information for law enforcement and commercial purposes does not state a legal claim, and does not belong in this judicial forum.

Dated: October 7, 2022

*/s/ Jeffrey L. Kessler*
Jeffrey L. Kessler*
Jeffrey J. Amato*
Michelle D. Tuma*
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
JKessler@winston.com
JAmato@winston.com
MTuma@winston.com

*Admitted *Pro Hac Vice*

Sean G. Wieber
Thomas F. McAndrew
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601-9703
Telephone: (312) 558-5600
Facsimile: (312) 558-5700
SWieber@winston.com
TMcAndrew@winston.com

*Attorneys for LexisNexis Risk Solutions*

**<u>Certificate of Service</u>**

I hereby certify that on the 7th day of October, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system.

<u>*/s/ Sean G. Wieber*</u>
Sean G. Wieber

Jeffrey L. Kessler*
Jeffrey J. Amato*
Michelle D. Tuma*
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
JKessler@winston.com
JAmato@winston.com
MTuma@winston.com

*Admitted *Pro Hac Vice*

Sean G. Wieber
Thomas F. McAndrew
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601-9703
Telephone: (312) 558-5600
Facsimile: (312) 558-5700
SWieber@winston.com
TMcAndrew@winston.com

*Attorneys for LexisNexis Risk Solutions*