**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

MARIA FERNANDA CASTELLANOS
RAMIREZ, ROSA CARRASCO, CLAUDIA
MARCHAN TORRES, MIJENTE SUPPORT
COMMITTEE, ORGANIZED
COMMUNITIES AGAINST
DEPORTATIONS,

                    Plaintiffs,

    v.

LEXISNEXIS RISK SOLUTIONS,

                  Defendant.

Case No. 22-cv-05384

**<u>LEXISNEXIS RISK'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS
MOTION TO DISMISS THE COMPLAINT</u>**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................. 1

ARGUMENT .................................................................................................................... 2

I.    Plaintiffs Cannot Overcome Their Fatal Pleading Deficiencies Through Strident Rhetoric and Unsupported Allegations.................................................................................... 2

II.    Illinois Law Does Not Recognize Any Right of Consumer Privacy Against the Publication of Lawfully Obtained Information................................................................... 3

III.    Plaintiffs Fail to State a Claim Under the Required Elements of the Illinois Consumer Fraud and Deceptive Business Practices Act ...................................................... 5

    a.    Plaintiffs Fail to Satisfy Any Version of the Consumer Nexus Test ..................... 5

    b.    Plaintiffs Fail to Establish an Unfair Business Practice........................................... 7

    c.    Plaintiffs Fail to Plead Actual Injury or Damages ................................................. 8

IV.    Plaintiffs Fail to State a Claim for Unjust Enrichment ........................................ 9

    a.    Unjust Enrichment Is Not a Standalone Cause of Action ...................................... 9

    b.    Plaintiffs Cannot Rely on Alleged Wrongful Conduct or Bare Assertions of Entitlement to LexisNexis Risk's Profits.............................................................. 10

V.    Plaintiffs Fail to State a Claim for Intrusion Upon Seclusion ........................... 12

    a.    Plaintiffs Do Not Allege the Required Physical Intrusion.................................... 12

    b.    Plaintiffs Do Not Plausibly Allege a Highly Offensive or Objectionable Intrusion ............................................................................................................... 14

    c.    Plaintiffs Fail to Establish That Any Information Obtained by LexisNexis Risk Was Private .................................................................................................... 15

VI.    Plaintiffs Do Not State a Claim for Declaratory Relief .................................... 16

VII.    The Organizational Plaintiffs Have Failed to Establish Associational Standing.............. 16

CONCLUSION............................................................................................................... 18

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Angelo v. Moriarty*,
No. 15 C 8065, 2016 U.S. Dist. LEXIS 19684 (N.D. Ill. Feb. 18, 2016) ........................12, 15

*Bonilla v. Ancestry.com Operations Inc.*,
574 F. Supp. 3d 582 (N.D. Ill. 2021) ...........................................................................7, 12, 13

*Brooks v. Thomson Reuters Co.*,
2021 U.S. Dist. LEXIS 154093 (N.D. Cal. Aug. 16, 2021)...............................................3, 4, 5

*Busse v. Motorola, Inc.*,
813 N.E.2d 1013 (Ill. App. Ct. 2004) ...................................................................................15

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) ..................................................................................14

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
761 F.3d 732 (7th Cir. 2014) .................................................................................................8

*Carpenter v. United States*,
138 S. Ct. 2206 (2018)...........................................................................................................5

*Clark v. Receivables Mgmt. Partners, LLC*,
No. 21-cv-00298, 2022 U.S. Dist. LEXIS 44468 (N.D. Ill. Mar. 14, 2022) ...........................9

*Cleary v. Philip Morris Inc.*,
656 F.3d 511 (7th Cir. 2011) ...............................................................................................10

*Cooney v. Chi. Pub. Schs.*,
943 N.E.2d 23 (Ill. App. Ct. 2010) .......................................................................................15

*DRL Enters., Inc. v. ePartners, Inc.*,
173 F. Supp. 2d 818 (N.D. Ill. 2001) .....................................................................................5

*EBCF Enterprises, Inc. v. Erie Ins. Exch.*,
572 F. Supp. 3d 489 (N.D. Ill. 2021) .....................................................................................4

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ..................................................................................16

*Horist v. Sudler & Co.*,
941 F.3d 274 (7th Cir. 2019) .................................................................................................9

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*,
545 N.E.2d 672 (Ill. 1989) ................................................................................................10

*Hunt v. Wash. State Apple Advert. Comm'n*,
432 U.S. 333 (1977) *superseded by statute on other grounds* ..........................................16, 17

*Indep. Trust Corp. v. Fid. Nat. Title Ins. of N.Y.*,
577 F. Supp. 2d. 1023 (N.D. Ill. 2008) ..............................................................................10

*McDonald v. Aps*,
385 F. Supp. 3d 1022 (N.D. Cal. 2019) ..............................................................................14

*Midcoast Aviation Inc. v. General Electric Credit Corp.*,
907 F.2d 732 (7th Cir. 1990) ......................................................................................10, 11

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016) ..............................................................................................14

*O'Connor v. Ford Motor Co.*,
567 F. Supp. 3d 915 (N.D. Ill. 2021) ..................................................................................4

*Opperman v. Path, Inc.*,
205 F. Supp. 3d 1064 (N.D. Cal. 2016) ..............................................................................14

*Patel v. Zillow, Inc.*,
2017 U.S. Dist. LEXIS 134785 (N.D. Ill. Aug. 23, 2017) ............................................14, 15

*Prairie Rivers Network v. Dynegy Midwest Generation, LLC*,
2 F.4th 1002 (7th Cir. 2021) ............................................................................................17

*Price v. Philip Morris, Inc.*,
848 N.E.2d 1 (Ill. 2005) (Karmeier, J., concurring) ............................................................9

*Robinson v. Toyota Motor Credit Corp.*,
775 N.E.2d 951 (Ill. 2002) ................................................................................................4

*Sotelo v. DirectRevenue, LLC*,
384 F. Supp. 2d 1219 (N.D. Ill. 2005) ................................................................................11

*Summers v. Earth Island Institute*,
555 U.S. 488 (2009) ..........................................................................................................17

*Thornley v. Clearview AI, Inc.*,
984 F.3d 1241 (7th Cir. 2021) ............................................................................................9

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*In re Trans Union Corp. Privacy Litigation*,
    326 F. Supp. 2d 893 (N.D. Ill. 2004) .......................................................................12

*U.S. Dep't of Def. v. Fed. Lab. Rels. Auth.*,
    510 U.S. 487 (1994) ...................................................................................................5

*U.S. Dep't of Just. v. Reps. Comm. for Freedom of Press*,
    489 U.S. 749 (1989) ...................................................................................................5

*U.S. Dep't of State v. Ray*,
    502 U.S. 164 (1991) ...................................................................................................5

*United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*,
    517 U.S. 544 (1996) .................................................................................................16

*Zic v. Italian Gov't Travel Off.*,
    130 F. Supp. 2d 991 (N.D. Ill. 2011) ......................................................................16

**Statutes**

815 ILCS 505/1(e) ..............................................................................................................5

United States Code Title 8 Section 1373 ............................................................................8

United States Code Title 8 Section 1644 ............................................................................8

Cal. Civ. Code § 1798.140(o)(2) .......................................................................................4

California Civil Code § 3344 ..............................................................................................9

California Consumer Privacy Act ...............................................................................1, 3, 4, 9

California Invastion of Privacy Act .....................................................................................9

California Unfair Competition Law .....................................................................................4

Freedom of Information Act .......................................................................................1, 4, 5

Ill. Comp. Stat. Ann. 805/5 ................................................................................................8

Illinois Biometric Information Privacy Act ........................................................................9

Illinois Consumer Fraud and Deceptive Business Practices Act ........................... *passim*

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

Illinois Personal Information Protection Act ....................................................................8

Illinois Trust Act .............................................................................................................7

**Other Authorities**

Restatement (Second) of Torts........................................................................................13

Restatement (Second) of Torts § 652 cmt. B (1977) .....................................................13

Rule 9(b) ...........................................................................................................................7

United States Constitution Fourth Amendment....................................................1, 4, 5

**INTRODUCTION**

Plaintiffs' Response confirms they have come to this Court seeking the judicial creation of an Illinois privacy right against the collection and dissemination of lawfully obtained and public information. They do so to accomplish their activist political goals of enjoining the lawful business activities of LexisNexis Risk. But no such right exists under Illinois law. Plaintiffs cite no case to support the existence of any such right under Illinois law. Nor do they cite any decision finding such an Illinois information privacy right in the patchwork of ill-fitting causes of action they plead. Instead, Plaintiffs rely on inflammatory rhetoric and misleading descriptions of LexisNexis Risk's business activities that do nothing to state a claim that can survive a motion to dismiss. When the allegations, as pleaded in the Complaint, are analyzed against governing Illinois law, it is clear that each of Plaintiffs' claims must be dismissed.

The Response, like the Complaint, attacks LexisNexis Risk's lawful business activities, which greatly benefit law enforcement, public safety, and the modern world of e-commerce. Plaintiffs seek to invoke a nonexistent Illinois "right of consumer privacy" that LexisNexis Risk purportedly violated by providing information to government and commercial customers in accordance with federal law. Because there is no Illinois statute, constitutional provision, or common law doctrine that establishes such a right, Plaintiffs try to fill the legal void by invoking the Fourth Amendment of the United States Constitution, the California Consumer Privacy Act (the "CCPA") and the federal Freedom of Information Act ("FOIA"). But none of those laws help Plaintiffs here, as the Fourth Amendment and FOIA only limit the actions of government actors, and the CCPA (and decisions applying California law) has no application in Illinois. If Plaintiffs hope to create a new consumer privacy right in Illinois to prevent the dissemination of lawfully acquired information, their efforts should be directed to the Illinois legislature. This Court cannot create out of whole cloth a new Illinois privacy right for consumer information.

To survive a motion to dismiss, Plaintiffs must plead facts plausibly supporting each of the elements of the claims they plead. Plaintiffs have not met, and cannot meet, this pleading burden. The Illinois causes of action Plaintiffs seek to invoke do not limit the dissemination of the information that affiliates of LexisNexis Risk have (1) lawfully obtained from public and commercial sources and (2) only provided to government and private customers in accordance with applicable law. Plaintiffs' strident rhetoric about the LexisNexis Risk business does not change the fact that LexisNexis Risk and its affiliates fully comply with all laws and regulations and that no legally viable claim under Illinois law has been pleaded in the Complaint. This Court should thus dismiss Plaintiffs' Complaint, without leave to replead, and direct Plaintiffs to pursue their political activism in a proper forum.

## ARGUMENT

**I.  Plaintiffs Cannot Overcome Their Fatal Pleading Deficiencies Through Strident Rhetoric and Unsupported Allegations**

Plaintiffs' Response is more political diatribe than legal brief. It is filled with heated rhetoric and a distorted depiction of the LexisNexis Risk business and the information solutions it offers to aid law enforcement, enhance public safety, and facilitate commercial transactions. For example, in the *very first paragraph of the Response*, Plaintiffs advance the false claim that LexisNexis Risk "refus[es] to allow consumers to opt out." Resp. Br. at 1–2, 8. Plaintiffs know this claim is false, as they admit just the opposite in their Complaint. Compl. ¶ 77. Plaintiffs, and any other individual, can submit an opt-out request to LexisNexis Risk and its affiliates at any time, and their information will not be included in many of LexisNexis Risk's products. *See* LexisNexis Opt-Out Form, LexisNexis (last updated 2019), https://optout.lexisnexis.com/.

Further, none of the inflammatory allegations about the LexisNexis Risk business is relevant to this Motion to Dismiss. But their inclusion in the Response is intended to inflame and

2

mislead the Court. Plaintiffs advance these allegations to construct a highly misleading portrayal of LexisNexis Risk as an omnipresent entity that is "creeping" and "prying" into private information that Plaintiffs have never disclosed themselves. But the reality, as the Complaint allegations confirm, is that LexisNexis Risk does not collect any information from consumers. It lawfully obtains all the information it provides to government agencies and other customers through public sources or thoroughly vetted partnerships to assist law enforcement, help prevent identity theft, and facilitate consumer transactions. Pounding the table and engaging in heated rhetoric does not result in a valid legal claim.

## II. Illinois Law Does Not Recognize Any Right of Consumer Privacy Against the Publication of Lawfully Obtained Information

Plaintiffs' Response is premised on the false notion that, under Illinois law, private actors, like LexisNexis Risk, cannot disseminate lawfully available information because doing so would transgress a recognized "right to privacy with respect to [Plaintiffs'] personal information." Resp. Br. at 4. But there is no such Illinois information privacy right.

To support this claim, Plaintiffs rely on out-of-state cases, such as *Brooks v. Thomson Reuters Co.*, **which have nothing to do with Illinois law**. 2021 U.S. Dist. LEXIS 154093, at *1 (N.D. Cal. Aug. 16, 2021). While California has chosen to enact legislation (the CCPA) recognizing a right of consumer privacy, Illinois has not. Because of this, reliance on *Brooks* and other cases, which apply the laws and policies of states other than Illinois, is of no help to Plaintiffs here. This is not a case where the Court is being asked to interpret a federal statute or a uniform act in which guidance can be drawn from courts across the country. Plaintiffs seek relief under Illinois statutory and common law and, to prevail on these claims, they must identify a consumer privacy right that has been recognized under Illinois law. Indeed, this district has previously recognized the fallacy of a plaintiff seeking to rely on decisions interpreting an out-of-state law

like the California Unfair Competition Law to support a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"). *See O'Connor v. Ford Motor Co.*, 567 F. Supp. 3d 915, 969 (N.D. Ill. 2021).

The decision in *Brooks* is simply inapposite. There, plaintiffs brought claims for violations of the right of consumer privacy set forth in the CCPA, California principles of unjust enrichment, and the California Unfair Competition Law (Plaintiffs do not bring these California-law claims here). *See Brooks*, 2021 U.S. Dist. LEXIS 154093 at *5. No comparable consumer privacy right can be found in Illinois law. And while unfairness is one element for asserting a claim under the ICFA, determining what is an "unfair" consumer practice in violation of the ICFA depends on the statutes and public policies of Illinois, not California. *See Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 961 (Ill. 2002); *EBCF Enterprises, Inc. v. Erie Ins. Exch.*, 572 F. Supp. 3d 489, 497 (N.D. Ill. 2021) (specifically analyzing *Illinois* public policy to determine if the insurance practices were unfair under the ICFA). Indeed, *Brooks* found that "California statutes—including the CCPA—reflect California's public policy of protecting consumer data." *Brooks*, 2021 U.S. Dist. LEXIS 154093, at *31 (internal quotations omitted). By contrast, there is no such public policy set forth in any Illinois statute. It is worth noting though, that even the CCPA does not apply to publicly available information and permits its collection and sale. *See* Cal. Civ. Code § 1798.140(o)(2).

Nor can Plaintiffs find any support for their claims by invoking the policies of federal laws limiting government disclosure of certain information in either FOIA or the Fourth Amendment. *See* Resp. Br. at 4 (citing cases relying on FOIA and the Fourth Amendment). Neither FOIA nor the Fourth Amendment set forth any limitation on the actions of private companies like LexisNexis Risk—they are solely restrictions on government actors. Plaintiffs therefore gain no traction by

citing either the references to these federal laws in *Brooks*, or other cases applying these laws. *See*, *e.g.*, *U.S. Dep't of Just. v. Reps. Comm. for Freedom of Press*, 489 U.S. 749 (1989) (discussing FOIA); *U.S. Dep't of Def. v. Fed. Lab. Rels. Auth.*, 510 U.S. 487 (1994) (discussing FOIA); *U.S. Dep't of State v. Ray*, 502 U.S. 164 (1991) (discussing FOIA); *Carpenter v. United States*, 138 S. Ct. 2206 (2018) (discussing the Fourth Amendment).[1]  Because there is no case, statute, or regulation in Illinois that recognizes a consumer privacy right limiting the public dissemination of information by a private company like LexisNexis Risk, there is no basis for any of Plaintiffs' causes of action here, which depend on the existence of such a right in order to state a claim.

## III.   Plaintiffs Fail to State a Claim Under the Required Elements of the Illinois Consumer Fraud and Deceptive Business Practices Act

### a.   *Plaintiffs Fail to Satisfy Any Version of the Consumer Nexus Test*

Plaintiffs concede that they fail to fit the definition of a "consumer" who has standing to assert a claim under the ICFA.  *See* 815 ILCS 505/1(e).  Nonetheless, Plaintiffs claim that they still can assert an ICFA claim under the "consumer nexus" test.  *See* Resp. Br. at 6–8.  This is not correct.  Simply put, the consumer nexus test still requires that the challenged business practice be directed at consumers of the product or service being sold, and neither Plaintiffs nor other persons whose information has been acquired by LexisNexis Risk or its affiliates from third parties have any consumer relationship with LexisNexis Risk.

There have been two formulations of the consumer nexus test discussed in the case law. Plaintiffs advocate for a broader version,[2] which they claim only requires them to make "a showing of 'trade practices directed to the market generally' or that the conduct [at issue] 'otherwise

---

[1] *Brooks* is also off-point for the additional reason that it involved a claim that the defendant violated various opt-out requirements for consumers.  *Brooks*, 2021 U.S. Dist. LEXIS 154093, at *20.  No such claim is asserted by Plaintiffs in the Complaint against LexisNexis Risk.

[2] Subsequent cases have criticized this formulation of the consumer nexus test as being "far too broad."  *See DRL Enters., Inc. v. ePartners, Inc*., 173 F. Supp. 2d 818, 820 (N.D. Ill. 2001).

5

implicates consumer protection concerns.'" *See* Resp. Br. at 6 (citing *Frazier v. United States Bank Nat'l Ass'n*, No. 11 C 8775, 2013 U.S. Dist. LEXIS 48601, at *12 (N.D. Ill. Apr. 4, 2013)). But Plaintiffs cannot make even this showing. The challenged trade practices in the Complaint are not directed at the consumer market generally, as the consumers of Accurint and AVCC products are not persons whose information is contained in these products, like Plaintiffs. The consumers of the products are the government agencies and commercial customers who purchase the Accurint and AVCC products, and there are no Complaint allegations that any unlawful conduct is directed at them. To the contrary, if the injunctive relief requested in the Complaint against these products were granted, it would affirmatively harm the interests of the actual consumers of the Accurint and AVCC products, who rely upon them to assist with criminal investigations, protect public safety, and prevent identity theft. *See* Opening Br. 1. For the same reason, Plaintiffs cannot plausibly allege that the challenged practices implicate the "concerns" of the actual consumers of the products.

Indeed, the general public does not even have access to Accurint and AVCC products—which not only require mandatory training prior to access, but also are subject to regulations and auditing by various government agencies. *See* Opening Br. at 2–3. Simply put, these are not products "directed to the market generally" and certainly not toward Plaintiffs. In the Response, Plaintiffs cite a lone case involving a defendant retailer who did not protect consumers' financial information and failed to notify them after a data breach. *See* Resp. Br. at 6 (*citing In re Michaels Store Pin Pad Litig.*, 830 F. Supp. 2d 518, 525–26 (N.D. Ill. 2011)). Such a case has no application here, where LexisNexis Risk is not selling products and dealing directly with consumers in a retail setting, and where there is no allegation of any data breach.

For similar reasons, Plaintiffs also cannot satisfy the more demanding four-pronged version of the "consumer nexus test," as set forth in LexisNexis Risk's opening Motion. S*ee* Opening Br. at 5. While Plaintiffs make the broad assertion that the four-pronged consumer nexus test is satisfied because the challenged practices purportedly "affect[] nearly every adult in the U.S., not only Plaintiffs" (Resp. Br. at 8), such generalized allegations of injury to the public do not establish the required consumer nexus. To the contrary, courts in this district have rejected sweeping assertions regarding the alleged exploitation of "millions of people" as establishing the necessary consumer nexus where the challenged conduct cannot be shown to be directed at actual consumers of the products at issue. *See Bonilla v. Ancestry.com Operations Inc.,* 574 F. Supp. 3d 582, 596 (N.D. Ill. 2021) (dismissing ICFA claim where plaintiff claimed Ancestry.com "exploit[ed] the identities of millions of individuals," but failed to allege that the people whose identities Ancestry.com allegedly exploited were consumers of Ancestry.com's product).

### b. *Plaintiffs Fail to Establish an Unfair Business Practice*

In addition to failing the consumer nexus text, Plaintiffs also cannot satisfy the unfair business practice element of the ICFA.[3] To support this claim, Plaintiffs must identify an Illinois statute or public policy that LexisNexis Risk has violated, but, once again, there is no such Illinois consumer privacy right to support Plaintiffs' claim. Instead, Plaintiffs seek to rely upon the same inapplicable federal or California laws that have no relevance to Illinois public policy. Resp. Br. at 10.

The *only* Illinois state statute that Plaintiffs cite to support their "unfair" business practices claim—the Illinois Trust Act—directly contradicts Plaintiffs' argument. That statute only limits

---

[3] Despite Plaintiffs' claim to the contrary, LexisNexis Risk acknowledged that the ICFA covers both fraudulent ***and*** unfair business practices. *See* Opening Br. at 5–6. LexisNexis Risk merely noted that Rule 9(b) would apply to any allegations of deceptive business practices to the extent that Plaintiffs might seek to assert such claims of fraudulent conduct in this case. *See* Opening Br. at 6, n. 4.

the conduct of Illinois *government* agencies in providing certain information to federal immigration authorities and expressly states:

> This Act shall not be construed to prohibit or restrict any entity from sending to, or receiving from, the United States Department of Homeland Security or other federal, State, or local government entity information regarding the citizenship or immigration status of any individual under Sections 1373 and 1644 of Title 8 of the United States Code."

5 Ill. Comp. Stat. Ann. 805/5.

In other words, the statute makes it clear that there is no Illinois public policy that would render the private conduct of LexisNexis Risk challenged here an unfair business practice in violation of the ICFA.

Nor can Plaintiffs make any showing that the challenged conduct of LexisNexis Risk should be declared an unfair business practice because it is immoral, unethical, or unscrupulous. There is no allegation in the Complaint that any of the information acquired by LexisNexis Risk or its affiliates from third parties was unlawfully obtained. To the contrary, each of the publicly available sources of government information accessed by LexisNexis Risk, as well as the information obtained from commercial partners, is conceded to have been lawfully available to LexisNexis Risk. And, as noted above, there are no Complaint allegations that LexisNexis Risk has not complied with any opt-out requirements. While Plaintiffs object to LexisNexis Risk's lawful business practices, they have no basis to contend that such practices satisfy the unfair business practice prong of the ICFA.[4]

### c.      *Plaintiffs Fail to Plead Actual Injury or Damages*

Finally, Plaintiffs have not alleged facts plausibly showing actual injury and damages as required by the ICFA. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir.

---

[4] Plaintiffs also assert that LexisNexis Risk "undermines the public policy goals of the Illinois Personal Information Protection Act ("PIPA"). Resp. Br. at 11. Yet, Plaintiffs assert no claim under PIPA, nor can they as PIPA only pertains to data breaches.

2014).  Instead, Plaintiffs once again cite inapplicable California laws that purportedly recognize the loss of the opportunity to profit from one's private information as a cognizable injury.  *See* Resp. Br. at 13.  There are no Illinois statutory analogues to either the California Civil Code, which provides for a statutory right of publicity (*see* California Civil Code § 3344), the California Invasion of Privacy Act ("CIPA"), or the CCPA.  And there are no Illinois cases suggesting that the inability to sell one's information constitutes *actual* harm under the ICFA.[5]

Equally fatal to their ICFA claims, Plaintiffs have alleged no mechanism to calculate what their purported economic loss might be.  *See Clark v. Receivables Mgmt. Partners, LLC*, No. 21-cv-00298, 2022 U.S. Dist. LEXIS 44468, at *10 (N.D. Ill. Mar. 14, 2022) ("actual damages must be 'calculable and measured by the plaintiff's loss'"); *see also Price v. Philip Morris, Inc.*, 848 N.E.2d 1, 55 (Ill. 2005) (Karmeier, J., concurring) ("The requirement of actual damages means that the plaintiff must have been harmed in a concrete, ascertainable way…Theoretical harm is insufficient.  Damages may not be predicated on mere speculation, hypothesis, conjecture or whim.").

## IV.  Plaintiffs Fail to State a Claim for Unjust Enrichment

### a.      *Unjust Enrichment Is Not a Standalone Cause of Action*

Plaintiffs do not dispute the fact that unjust enrichment is generally not a standalone cause of action in Illinois.  *Horist v. Sudler & Co.*, 941 F.3d 274, 281 (7th Cir. 2019) (dismissing an unjust enrichment claim relying upon the same challenged conduct as another claim).  Plaintiffs' unjust enrichment claim relies solely on the same alleged improper conduct—the so-called "collecting, aggregating, and selling" of information – underlying Plaintiffs' ICFA and intrusion

---

[5] The single Illinois case Plaintiffs cite, *Thornley v. Clearview AI, Inc*., 984 F.3d 1241 (7th Cir. 2021), involves Illinois's Biometric Information Privacy Act and merely acknowledges that a plaintiff may assert that by selling her biometric data, the collector has deprived her of the opportunity to "profit from her biometric information."  But that court later noted that, like here, there were no "allegations of concrete or particularized harm to the plaintiffs" in that case.  *Id*. at 1247.

upon seclusion claims. Resp. Br. at 14. Accordingly, their unjust enrichment claim must "stand or fall" with their ICFA and intrusion upon seclusion claims. *Cleary v. Philip Morris Inc*., 656 F.3d 511, 517 (7th Cir. 2011). Plaintiffs do not seriously dispute this point, which means that their unjust enrichment claim must be dismissed for the same reasons as the rest of their Complaint. *See* Resp Br. at 15 n.13.

###### b.      *Plaintiffs Cannot Rely on Alleged Wrongful Conduct or Bare Assertions of Entitlement to LexisNexis Risk's Profits*

To advance an unjust enrichment claim against a third-party like LexisNexis Risk, Plaintiffs must show that they had a better claim to the financial benefit than the receiving party or that the receiving party obtained the benefit through wrongful conduct. *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989) (internal citations omitted). Plaintiffs cannot satisfy either of these tests, as there is no basis for them to contend that they have a superior right to the revenues LexisNexis Risk received by selling its products or that LexisNexis Risk obtained these revenues through any violation of Illinois law or policy. Nor do Plaintiffs cite any Illinois statute or regulation that grants them a financial interest in the information contained within the challenged products.

In an effort to avoid the rule that an unjust enrichment claim requires a showing of illegal or morally depraved wrongful conduct, Plaintiffs cite dicta contained in *a single footnote* from thirty-two years ago in the Seventh Circuit's decision in *Midcoast Aviation Inc. v. General Electric Credit Corp*., 907 F.2d 732, 738 n.3 (7th Cir. 1990). *See* Resp. Br. at 14. But that outdated footnote is of no help to Plaintiffs. In the first place, this district has recognized that the *Midcoast Aviation* dicta have never been followed or endorsed. See *Indep. Trust Corp. v. Fid. Nat. Title Ins. of N.Y.*, 577 F. Supp. 2d 1023, 1047 n.27 (N.D. Ill. 2008) (collecting cases). Further, the facts in *Midcoast Aviation* have no relevance here. There, the plaintiff provided a service to the defendant, who

assured the plaintiff that it would receive payment for its service, even if the third-party contracting with the plaintiff failed to pay. *Midcoast Aviation*, 907 F.2d at 735-36. By contrast, Plaintiffs here do not allege that there was any transactional relationship between Plaintiffs and LexisNexis Risk, let alone that LexisNexis Risk ever communicated any promise to compensate Plaintiffs. Baldly alleging that LexisNexis Risk's conduct is "unjust" does not plausibly show that it meets the wrongfulness requirement for an unjust enrichment claim. As discussed above, there is no Complaint allegation that LexisNexis Risk was not acting within the law when it acquired and sold its information products. Nor is there any Complaint allegation disputing that the challenged products provide valuable benefits to law enforcement, public safety, the prevention of identity theft and the facilitation of e-commerce. Simply put, there is nothing plausibly "wrongful" alleged about such conduct.

Further, "a defendant's 'wrongful conduct' alone will not support a claim for unjust enrichment . . . if plaintiff has no 'claim' or 'entitlement' to the monies." *Sotelo v. DirectRevenue, LLC*, 384 F. Supp. 2d 1219, 1234 (N.D. Ill. 2005) (citing *Ass'n Benefit Servs., Inc. v. AdvancePCS Holding Corp.*, No. 04 C 3271, 2004 U.S. Dist. LEXIS 18800, at *3 (N.D. Ill. Sept.21, 2004); *Asch v. Teller, Levit & Silvertrust, P.C.*, No. 00 C 3290, 2003 U.S. Dist. LEXIS 16747, at *7 (N.D. Ill. Sept. 26, 2003)). For example, in *Sotelo*, the plaintiff alleged that the defendants used spyware to track the plaintiff's internet use to provide targeted advertising, allowing defendants to profit from the use of the plaintiff's information. *Sotelo*, 384 F. Supp. 2d 1219 at 1223–24. The court found that even if the plaintiff could show wrongful conduct by the defendants, he did not allege that he had an entitlement to the defendants' profits, so dismissal of the unjust enrichment claim was required. *Id.* at 1234.

11

Likewise, Plaintiffs have not plausibly alleged any entitlement to the revenues that LexisNexis Risk or its affiliates have received by selling the challenged products. LexisNexis Risk's products have economic value because of the proprietary analytics that have been developed to organize and access the information that LexisNexis Risk's affiliates have gathered from lawful sources. Plaintiffs have no lawful entitlement to that value and thus no basis for asserting an unjust enrichment claim.

## V.     Plaintiffs Fail to State a Claim for Intrusion Upon Seclusion

### a.     *Plaintiffs Do Not Allege the Required Physical Intrusion*

Plaintiffs' intrusion upon seclusion claim must fail for the simple fact that it does not, *and cannot*, allege a "highly offensive" physical intrusion onto plaintiffs' property. *Angelo v. Moriarty*, No. 15 C 8065, 2016 U.S. Dist. LEXIS 19684, at *13-14 (N.D. Ill. Feb. 18, 2016) (internal citations omitted). Mere publication or disclosure of information to a third party is unequivocally not an intrusion upon seclusion. *Id.* The conclusion here is clear-cut as this district has already disposed of a strikingly analogous claim in *In re Trans Union Corp. Privacy Litigation*. *See* Opening Br. at 11.

Plaintiffs try and fail to distinguish *In re Trans Union Corp. Privacy Litigation.* There, the court held there was no intrusion upon seclusion claim where the plaintiffs disclosed information to a third-party, who "subsequently and lawfully" transmitted the information to Trans Union. 326 F. Supp. 2d 893, 901-02 (N.D. Ill. 2004). Plaintiffs argue that the case is not controlling because, in *Trans Union*, the plaintiffs did not allege they were unaware that creditors would pass their information on to Trans Union, which they argue is not the case here. Resp. Br. at 16. But that argument for distinguishing the principles of *Trans Union* was already rejected in this district in *Bonilla*. 574 F. Supp. 3d at 597.

In *Bonilla*, the plaintiff brought an intrusion upon seclusion claim, asserting that the defendant used his name, photos, images, and likeness to sell its product, without his consent. *Id.* at 587. There, the defendant's "business model include[d] amassing databases of personal information and subsequently selling access to that information. This include[d] data gathered from yearbooks and aggregated into digital records that identif[ied] specific individuals." *Id.* at 588. The Bonilla court dismissed the intrusion claim because the plaintiff could not show that the use of his information from yearbooks was unauthorized, even though the plaintiff argued that "he never provided consent to [the defendant]." *Id.* at 597. As the Bonilla court explained, the controlling point was that there were "no allegations that [the defendant]'s collection of this information was unauthorized – that is, taken without permission from the owners of the yearbooks." *Id.* The same is true here. While Plaintiffs argue that they did not give any consent to LexisNexis Risk to use their information, that is beside the point, because there are no Complaint allegations that LexisNexis Risk has taken any information from its third-party sources (the equivalents of the yearbook sources in *Bonilla*) without obtaining the authorization of those sources.

Casting Illinois law aside, Plaintiffs cite the Restatement (Second) of Torts for the proposition that an intrusion may occur through investigation or examination into private matters. Resp. Br. at 17. But even that proposition does not help Plaintiffs, as the examples of such behavior set forth in the Restatement still involve physical intrusions, including "opening his private and personal mail, searching his safe or his wallet, examining his private bank account, or compelling him by a forged court order to permit a personal inspection of his personal documents." Restatement (Second) of Torts § 652 cmt. B, at 378–79 (1977). There are no such physical intrusions upon Plaintiffs' property alleged here.

13

Nor can Plaintiffs find any support for their intrusion claims in the four non-Illinois cases that they cite. Resp. Br. at 17. The plaintiffs in all four cases were direct consumers of each of the defendant's products and the intrusion claims were based on information that the defendants physically obtained from the plaintiffs when they used the defendants' products. *McDonald v. Aps*, 385 F. Supp. 3d 1022, 1027 (N.D. Cal. 2019) (plaintiffs were parents of children who played on mobile apps, suing creators of the app and advertisers on the app); *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 267 (3d Cir. 2016) (plaintiffs were children who used defendants' websites); *Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1067 (N.D. Cal. 2016) (plaintiffs sued companies whose phone apps they used); *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 612 (N.D. Cal. 2021) (plaintiffs were users of defendant's internet browser). Once again, there are no allegations here of any direct connection between LexisNexis Risk and Plaintiffs in which LexisNexis Risk obtained any information directly from any of the Plaintiffs. Plaintiffs' intrusion upon seclusion claim must fail for failure to allege any physical intrusion by LexisNexis of Plaintiffs' property.

### b. Plaintiffs Do Not Plausibly Allege a Highly Offensive or Objectionable Intrusion

Because there was no physical intrusion upon Plaintiffs' property, there also cannot be any plausible claim of an intrusion that was highly offensive or objectionable. That is because the mere publication of information, as is alleged here, "says nothing about whether there was a highly offensive intrusion to glean the information ultimately published." *Patel v. Zillow, Inc.,* 2017 U.S. Dist. LEXIS 134785 at *28 (N.D. Ill. Aug. 23, 2017).

Plaintiffs try to avoid this requirement by arguing that it is highly objectionable that LexisNexis Risk has published their information to law enforcement and immigration agencies. Resp. Br. at 17–18. But those allegations miss the mark. To state a claim for unlawful intrusion,

Plaintiffs must allege highly offensive or objectionable conduct used to obtain the information, not to publish it. *See Patel,* 2017 U.S. Dist. LEXIS 134785, at *28. But Plaintiffs do not, and cannot, make any Complaint allegations that LexisNexis Risk's acquisition of their information from third parties was in any way unlawful, offensive, or morally objectionable. *See id.* at *28-29 (finding plaintiff did not properly plead highly offensive or objectionable intrusion because, among other reasons, the defendant's actions were not unlawful).

### c. *Plaintiffs Fail to Establish That Any Information Obtained by LexisNexis Risk Was Private*

Finally, Plaintiffs cannot state an intrusion upon seclusion claim because the information allegedly intruded upon is not private. *See Angelo*, 2016 U.S. Dist. LEXIS 19684, at *14. The type of information that Plaintiffs allege has been acquired and published by LexisNexis Risk—"family history, current addresses, phone numbers associated with non-public utility accounts, unredacted social security numbers, [and] biographical details" (Compl. ¶ 106)—is not considered private under Illinois law. *See Busse v. Motorola, Inc.*, 813 N.E.2d 1013, 1018 (Ill. App. Ct. 2004) (stating that names, addresses, dates of birth, facts of marriage, and Social Security numbers cannot establish the privacy element of an intrusion upon seclusion claim).

To try and remedy this, Plaintiffs use their Opposition to argue that LexisNexis Risk has also obtained and published other types of their personal information (such as romantic arrangements and embarrassing photos, which would be considered "private"). Resp. Br. at 18. First, none of these allegations is alleged to apply to any of Plaintiffs, so they cannot support their claims. And second, even these claims include information that was purportedly obtained from public records, which would, once again, preclude the information from being considered private under Illinois law. *See Cooney v. Chi. Pub. Schs.*, 943 N.E.2d 23, 32 (Ill. App. Ct. 2010) (holding that "matter of public records [are not] private facts").

15

Recognizing that Illinois law does not support their intrusion claim, Plaintiffs, once again, improperly seek to invoke inapplicable California law. Plaintiffs' reliance on *In re Facebook* is particularly telling. The quoted language Plaintiffs cite from this decision was from the California court's discussion of a public *disclosure* of private facts claim – a California cause of action which does not exist under Illinois law. *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 797 (N.D. Cal. 2019). Such inapposite California authority cannot save Plaintiffs from their inability to plead an Illinois intrusion claim.

## VI. Plaintiffs Do Not State a Claim for Declaratory Relief

Plaintiffs essentially concede their declaratory relief claim is duplicative of their other causes of action. Their only response appears in a footnote, saying: "LexisNexis also challenges Plaintiffs declaratory relief cause of action as duplicative of relief sought in other claims. Mot. 13-14. Should this court agree that the cause of action is duplicative, Plaintiffs request leave to amend that cause of action to address this issue." Resp. Br. at 19, fn. 14. Because the declaratory relief claim seeks a judgment that LexisNexis Risk violated Plaintiffs' rights under the ICFA and Illinois common law, it *is* entirely duplicative of Counts I-III and should be dismissed as a matter of law. Compl. ¶¶ 80–107, 112; *Zic v. Italian Gov't Travel Off.*, 130 F. Supp. 2d 991, 997-98 (N.D. Ill. 2011).

## VII. The Organizational Plaintiffs Have Failed to Establish Associational Standing

Finally, Plaintiffs are mistaken that LexisNexis Risk's argument with respect to their lack of associational standing relies on the kind of relief Plaintiffs seek. The fact that Plaintiffs have now made it clear that the Organizational Plaintiffs are only seeking injunctive relief does not relieve them from having to meet their burden to establish associational standing under the first prong of *Hunt*. *See Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977) *superseded by statute on other grounds*, as stated in *United Food & Com. Workers Union Loc.*

16

*751 v. Brown Grp., Inc.*, 517 U.S. 544 (1996) (holding that to assert associational standing, an association must show that (1) at least one of its members would "have standing to sue in their own right"; (2) "the interests it seeks to protect are germane to the organization's purpose"; and (3) "neither the claim asserted nor the relief requested requires the participation of individual members").

As previously demonstrated, the confidential nature by which the Organizational Plaintiffs chose to plead makes it impossible to determine whether any individual member's information was unlawfully obtained by LexisNexis Risk, whether the member meets the requirements for a "consumer" under the ICFA, how and whether the member's information was wrongfully published by LexisNexis Risk, and whether that publication caused the individual member any actionable damages. *See* Opening Br. at 15. For these reasons alone, the first prong of *Hunt* cannot be satisfied, and associational standing must be denied.

In *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, an organizational plaintiff seeking injunctive relief submitted supplemental declarations from several of its individual members to support its associational standing argument, and still the court found the organization could not meet the first prong of the associational standing test. 2 F.4th 1002, 1009, 1013 (7th Cir. 2021). *See also Summers v. Earth Island Institute*, 555 U.S. 488, 490-92 (2009) (affidavits by organization members were insufficient to establish the requirements of associational standing). Here, the Organizational Plaintiffs put forth two confidential members, but do nothing more than describe them as engaging in typical consumer activity—purchasing electricity services, having a cell phone account, and purchasing a home. *See* Compl. ¶¶ 73-74. There are no allegations provided which would enable the Court to determine that the first prong of the associational standing test set forth in *Hunt* can be satisfied.

## CONCLUSION

For all the foregoing reasons, LexisNexis Risk respectfully requests that the Court dismiss all of Plaintiffs' claims with prejudice. The very core of Plaintiffs' claims, which is premised on the existence of a consumer's legal right to information privacy, is inconsistent with governing Illinois law, and no amount of artful repleading can cure this legal deficiency. Plaintiffs' determined advocacy for the creation of such a legal right in Illinois must be directed to the legislature, not this Court.

Dated: November 29, 2022

*/s/ Jeffrey L. Kessler*
Jeffrey L. Kessler*
Jeffrey J. Amato*
Michelle D. Tuma*
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
JKessler@winston.com
JAmato@winston.com
MTuma@winston.com

*Admitted *Pro Hac Vice*

Sean G. Wieber
Thomas F. McAndrew
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601-9703
Telephone: (312) 558-5600
Facsimile: (312) 558-5700
SWieber@winston.com
TMcAndrew@winston.com

*Attorneys for LexisNexis Risk Solutions*

**<u>Certificate of Service</u>**

I hereby certify that on the 29th day of November 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system.

*/s/ Sean G. Wieber*
Sean G. Wieber

Jeffrey L. Kessler*
Jeffrey J. Amato*
Michelle D. Tuma*
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY  10166-4193
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
JKessler@winston.com
JAmato@winston.com
MTuma@winston.com

*Admitted *Pro Hac Vice*

Sean G. Wieber
Thomas F. McAndrew
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601-9703
Telephone: (312) 558-5600
Facsimile: (312) 558-5700
SWieber@winston.com
TMcAndrew@winston.com

*Attorneys for LexisNexis Risk
Solutions*
